## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ORIENTAL BANK** | **CIVIL NO.:  16-02877** |
| **Plaintiff,** | |
| **v.** | |
| **HON. ALEJANDRO GARCÍA PADILLA**, in his official capacity as Governor of the Commonwealth of Puerto Rico; | |
| **HON. JUAN C. ZARAGOZA GÓMEZ**, in his official capacity as Secretary of the Treasury of the Commonwealth of Puerto Rico; | |
| **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO;** | |
| **HON. ALBERTO BACÓ BAGUÉ**, in his official capacity as President of the Government Development Bank for Puerto Rico; | |
| **PUERTO RICO HOUSING FINANCE AUTHORITY;** | |
| **HON. JOSÉ A. SIERRA MORALES**, in his official capacity as Executive Director of the Puerto Rico Housing Finance Authority | |
| **Defendants** | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**TO THE HONORABLE COURT**:

**COMES NOW** Plaintiff, Oriental Bank, through the undersigned attorneys, and respectfully states, alleges and prays as follows against defendants Hon. Alejandro García Padilla, in his official capacity as Governor of the Commonwealth of Puerto Rico; Hon. Juan C. Zaragoza Gómez, in his official capacity as Secretary of the Treasury of the Commonwealth of

Puerto Rico; the Government Development Bank for Puerto Rico; Hon. Alberto Bacó Bagué, in his official capacity as President of the Government Development Bank for Puerto Rico; the Puerto Rico Housing Finance Authority; and Hon. José A. Sierra Morales, in his official capacity as Executive Director of the Puerto Rico Housing Finance Authority:

## <u>NATURE OF THIS ACTION</u>

1.      This is an action arising under the Puerto Rico Oversight, Management, and Economic Stability Act of 2016, Pub. L. 114-187 ("PROMESA"), to prevent the Commonwealth's diversion and expropriation of certain funds designated by law for the repayment of a loan extended by the Government Development Bank for Puerto Rico (the "GDB") to the Puerto Rico Housing Finance Authority (the "PRHFA") and in which Oriental Bank acquired a participation.

2.      With the enactment of Puerto Rico Act 122-2010 the Puerto Rico Legislature assigned for the benefit of the PRFHA, particularly for the financing of the 'Mi Nuevo Hogar' Program, certain abandoned and unclaimed funds and other liquid assets[1] under the custody of the Puerto Rico Commissioner of Financial Institutions ("OCFI").

3.      To that effect Act 122-2010 commands the OCFI to transfer to the Puerto Rico Department of the Treasury the "abandoned and unclaimed funds and liquid assets" under its custody and, thereafter, also commands the Secretary of the Treasury of the Commonwealth of Puerto Rico to permanently distribute to the PRHFA, on an annual basis, those same "abandoned and unclaimed funds and liquid assets" for the repayment of any debt incurred by the PRHFA in the financing of the "Mi Nuevo Hogar" Program.

---

[1] Abandoned or unclaimed funds are those funds in the custody of a financial institution that, within the five (5) preceding years, the owner has shown no interest in said money or liquid assets. 7 L.P.R.A. §2103.

4.      On June 30, 2011, the GDB granted a loan to the PRHFA in the original principal amount of $63,886,424 (hereinafter referred to as the "PRHFA Loan") for the purpose of financing the "Mi Nuevo Hogar" Program. In the loan agreement, the PRHFA agreed to repay the loan to the GDB with the "abandoned and unclaimed funds", as provided in Act 122-2010. The parties agreed that these funds would be transferred and deposited by the Puerto Rico Secretary of the Treasury in a "special account" to be opened and maintained by the PRHFA in the GDB (hereinafter referred to as "the Special Account").

5.      Afterwards, on October 23, 2012, the GDB and Banco Bilbao Vizcaya Argentaria Puerto Rico (hereinafter, "BBVAPR")[2], now Oriental Bank, entered into a Participation Agreement in regards to the PRHFA Loan. Pursuant to the terms and conditions of the Participation Agreement, Oriental Bank purchased an undivided interest in the PRHFA Loan in the aggregate amount of $30,000,000.00, amount which represented Oriental Bank's participation in the PRHFA Loan.

6.      The Participation Agreement does not constitute a loan obligation of the GDB with Oriental Bank. It is simply an agreement where both financial institutions established the terms and conditions of their shared interest as creditors in the PRHFA Loan.

7.      Pursuant to the terms of the Participation Agreement, on September 30, 2016 the GDB had the obligation to distribute to Oriental Bank, from the funds held in the Special Account, the amount of $4,285,714.29. However, the GDB has not made the referred disbursement, which constitutes an event of default under the terms of the Participation Agreement.

---

[2] BBVAPR and Oriental Bank merged on December 17, 2012, with Oriental Bank as the surviving entity. Therefore, BBVAPR will be interchangeably referred throughout this Complaint as Oriental Bank.

8.      Furthermore, contrary to the requirements of Act 122-2010, the Puerto Rico Secretary of the Treasury has not transferred the "abandoned and unclaimed funds" to the Special Account and neither the GDB nor the PRHFA appear to have established the Special Account in the GDB.

9.      Hence, the Secretary of the Treasury of the Commonwealth of Puerto Rico has, unilaterally and in violation of his ministerial duties and obligations under the law, decided not to transfer the Act 122-2010 "abandoned and unclaimed funds" to the Special Account and has instead diverted the funds, designated by Act 122-2010 to be used **exclusively** for the repayment of the PRHFA Loan, to be used for other unspecified government purposes.

10.      In turn, the GDB, through its President, Alberto Bacó Bagué, has acted with gross negligence by not taking the necessary steps to ensure the establishment of the Special Account and that the Secretary of Treasury deposit the Act 122-2010 "abandoned and unclaimed funds" in said account for the repayment of the PRHFA Loan.

11.      In addition, the GDB has acted intentionally and with gross negligence by not complying with its obligations with Oriental Bank to distribute the corresponding portion of those funds to Oriental Bank as it agreed in the Participation Agreement.

12.      Upon information and belief, the GDB received a payment from the PRHFA in the first quarter of 2016 and intentionally and maliciously failed to apply such payment pro-rata to the corresponding undivided interests of GDB and Oriental Bank in the PRHFA Loan.

13.      Oriental Bank seeks a declaratory judgment from this Court declaring that the stay imposed by PROMESA does not apply to this case since the obligations to be enforced against the governmental entities herein are not liabilities as defined in PROMESA and; therefore,

Oriental Bank is not impeded by any provision of PROMESA from bringing this action before this Honorable Court.

14.    Furthermore, Oriental Bank seeks a preliminary injunction: (i) ordering the Governor of Puerto Rico, Hon. Alejandro García Padilla, in his official capacity, to ensure compliance by the Secretary of the Treasury with the obligations imposed by Act 122-2010; (ii) ordering the Secretary of the Treasury to deposit the "abandoned and unclaimed funds" in an account administered by the Court, given the extent of the conscious and voluntary disregard of the Defendants to their obligations under Act 122-2010 and the Participation Agreement and also their gross negligence as they have all acted in total disregard of their legal and contractual obligations; (iii) in the alternative, (a) ordering José A. Sierra Morales, in his official capacity as Executive Director of the PRHFA, to ensure compliance by the PRHFA with its obligations under Act 122-2010, and open the Special Account and perform all necessary diligences to ensure that the Act 122-2010 funds be deposited in the Special Account; (b) ordering Hon. Juan C. Zaragoza Gómez, in his official capacity as the Secretary of the Department of the Treasury of the Commonwealth of Puerto Rico, to comply with his ministerial and legal obligation to deposit the "abandoned or unclaimed funds", as defined in Act 122-2010, in the Special Account; (c) ordering Alberto Bacó Bagué, in his official capacity as President of the GDB, to comply with his obligations under the Participation Agreement; (iv) prohibiting Defendants from using these funds for purposes other than the repayment of the PRHFA Loan; and (v) ordering Mr. Bacó Bagué to ensure compliance by the GDB with its obligations under Section 26 of the Participation Agreement and repurchase Oriental Bank's participation in the PRHFA Loan.

## PARTIES

15.     Oriental Bank is a banking institution duly organized and existent under the laws of the Commonwealth of Puerto Rico and the successor of Banco Bilbao Vizcaya Argentaria Puerto Rico as a result of a merger executed between the two financial institutions that was effective on December 18, 2012.

16.     Defendant Alejandro García Padilla is the Governor of the Commonwealth of Puerto Rico, and is sued in his official capacity.

17.     Defendant Juan C. Zaragoza Gómez is the Secretary of the Treasury of the Commonwealth of Puerto Rico, and is sued in his official capacity.

18.     Defendant GDB is a public corporation of the Commonwealth of Puerto Rico and maintains its principal executive offices in the Roberto Sánchez Vilella Government Center on De Diego Avenue in San Juan, Puerto Rico.

19.     Defendant Alberto Bacó Bagué is the President of the GDB and is sued in his official capacity.

20.     Defendant PRHFA is a subsidiary of the GDB.

21.     Defendant José A. Sierra Morales is the Executive Director of the PRHFA and is sued in his official capacity.

## JURISDICTION AND VENUE

22.     This action arises under the United States Constitution, the Puerto Rico Constitution, and federal law.

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and PROMESA §§ 303(1), 303(3), and 405(e).

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), since the events or omissions giving rise to these claims have occurred, and continue to occur, in this District and all parties are situated in this District.

## FACTUAL BACKGROUND

### A. Act No. 122-2010: Act for the Financing of the 'Mi Nuevo Hogar' Program

25.     The PRHFA is a subsidiary of the GDB, whose main objective is to promote the development of affordable housing and to provide financing opportunities, incentives or subsidies to prospective homeowners in Puerto Rico.

26.     The PRHFA created the "Mi Nuevo Hogar" Program[3], which consists of a subsidized contribution in the form of a certified voucher, equal to five percent (5%) of the sales price or appraised value, whichever is less, of the housing unit qualified under the established parameters.

27.     Act 122-2010, known as the Act for the Financing of the "Mi Nuevo Hogar" Program[4], was enacted on August 6, 2010, in order to finance, for an extended period of time, the "Mi Nuevo Hogar" Program.

28.     Section 3 of Act 122-2010 requires the Puerto Rico Department of the Treasury to transfer to the Special Account, under the custody of the PRHFA, the funds and liquid assets declared and notified as abandoned or unclaimed[5] by the Office of the Commissioner of Financial Institutions.

---

[3] Pursuant to Act 34-2013, the "Mi Nuevo Hogar" Program was renamed as the "Mi Casa Propia" Program.

[4] Now known as the Act for the Financing of the "Mi Casa Propia" Program, pursuant to Act 31-2014.

[5] Abandoned or unclaimed funds are those funds in the custody of a financial institution that, within the five (5) preceding years, the owner has shown no interest in said money or liquid assets. 7 L.P.R.A. §2103.

29.     Section 4 of Act 122-2010 requires the PRHFA to keep the Special Account (the "Special Fund for Financing the 'Mi Nuevo Hogar' Program"), where all the funds described in Section 3 shall be deposited, to finance the "Mi Nuevo Hogar" Program. Act 122-2010 does not require the PRHFA to maintain the Special Account in the GDB.

30.     Section 7 of Act 122-2010 granted the PRHFA the authority to request financing for the "Mi Nuevo Hogar" Program guaranteed by the funds to be deposited in the "Special Fund".

31.     Act 122-2010 was amended by Act 42-2012, which was enacted on February 14, 2012, providing that no later than September 30th of each year, commencing in 2014, the Secretary of the Treasury of the Commonwealth of Puerto Rico would permanently distribute to the PRHFA the abandoned and unclaimed funds and liquid assets for the repayment of any debt incurred by the PRHFA for the financing of the "Mi Nuevo Hogar" Program.

32.     Act 122-2010 was further amended by Act 31-2014, requiring the Treasury Department to transfer to the PRHFA's Special Account the abandoned and unclaimed funds on or before January 1st of each year, starting in the year 2014.

**B.  The Loan Agreement**

33.     On June 30, 2011, the PRHFA and the GDB entered into a Loan Agreement ("Credit Agreement") in which the GDB provided a non-revolving line of credit to the PRHFA in the principal amount of $63,886,424.14 (the "PRHFA Loan").

34.     Pursuant to Section 1.3 of the Credit Agreement, the PRHFA agreed to open and maintain the Special Account in the GDB, where all the funds described in Section 3 of Act 122-2010 were to be deposited. The PRHFA agreed to repay the loan from the funds deposited in the Special Account.

35.     On March 20, 2012, the PRHFA and the GDB executed a First Amendment to the Credit Agreement, in which the parties amended Section 3.1.2 of the Credit Agreement and provided that the PRHFA's failure to make principal and interest payments to the GDB would constitute a default of the PRHFA obligations under the Credit Agreement.

36.     On July 13, 2012, the PRHFA and the GDB executed a Second Amendment to the Credit Agreement. In this second amendment, the parties agreed to increase the principal amount of the line of credit to a maximum amount of $116,000,000.00. The parties also agreed that all funds assigned to the PRHFA pursuant to Act 122-2010 were to be deposited in the Special Account in the GDB and that, in case these funds were not sufficient to satisfy the interest and principal payments due under the Credit Agreement, the PRHFA would pay the balance until full payment with its own funds and assets.

### C.  The Participation Agreement

37.     On October 23, 2012, the GDB and Oriental Bank, entered into a Participation Agreement in regards to the PRHFA Loan.

38.     Pursuant to the Participation Agreement, Oriental Bank purchased an undivided interest in the PRHFA Loan in the aggregate amount of $30,000,000.00, representing Oriental Bank's participation amount in the PRHFA Loan.

39.     The parties agreed in the Participation Agreement that the principal amount would be paid to Oriental Bank in seven (7) annual payments of $4,285,714.29 each, starting on September 30, 2014 and ending on September 30, 2020. Interest payments would be payable on a monthly basis. The GDB would make the above described disbursements from the PRHFA funds deposited in the Special Account.

40.     The parties further agreed that "[t]he Lender [the GDB] covenants that all moneys in the Special Account shall be used to pay the principal of and interest on the Participation Amount and the Loan, on the date due, **and shall be used for no other purpose until the Loan and the Participation have been paid in full**." (Emphasis supplied).

41.     In the Participation Agreement, the parties expressly agreed that Oriental Bank would acquire all of the GDB's rights under the PRHFA Loan. Specifically, the parties agreed as follows:

> Lender [the GDB] hereby conveys, grants and assigns to the Participant [Oriental Bank ], without recourse to or representation or warranty whatsoever (except to the extent, if at all, expressly provided herein), and the Participant hereby acquires and accepts from the Lender, a Participation in the Loan and the rights of the Lender under or in connection with the Loan Agreement, the Note and all other Loan Documents, including, without limitation: (i) Lender's rights to obtain payment from PRHFA pursuant to the Loan Agreement and the Note; (ii) any and all rights conferred upon the Lender as security for the Lender's rights to obtain payment under the Loan Agreement and the Note, and (iii) the risks and liabilities arising or incurred under or in connection with the Loan Agreement and the Note, including the risk of late performance or non-performance by PRHFA of its obligations under the Loan Agreement or the Note.

42.     According to the terms of the Participation Agreement, an "event of default" shall occurs when either the PRHFA or the GDB fails to make a principal or interest payment, pursuant to the Participation Agreement or the Credit Agreement.

43.     The Participation Agreement further provides that "[t]he Lender shall not be liable to the Participant for any act or omission or any error of judgment relating to the Loan on the part of the Lender or any of its agents, officers, employees or representatives, <u>except for its or their willful misconduct or gross negligence</u>." (Emphasis supplied).

44.     Also, under the Participation Agreement the parties expressly agreed that "[n]o amount advanced by the Participant [Oriental Bank] to purchase any Participation in the

obligation of PRHFA under the Loan Documents shall be considered a loan by Participant [Oriental Bank] to the Lender [the GDB]."

45.     On March 2016, the PRHFA made to the GDB an advance payment pursuant to the Loan Agreement, and the GDB proceeded to disburse the sum of $10,000,000 to Oriental Bank. Nonetheless, the disbursement made by the GDB to Oriental Bank was not a pro-rata share of the advance payment made by the PRHFA and thus, such incomplete payment to Oriental Bank, constituted a violation by the GDB of its obligations under the Participation Agreement.

D. **The Moratorium Act and Executive Order 2016-10**

46.     Act 21-2010, known as the Moratorium Act, was signed into law on April 6, 2016.

47.     The Moratorium Act authorizes the Governor of Puerto Rico to declare a state of fiscal emergency in the Commonwealth of Puerto Rico and "directs the Governor to prioritize payment of essential services over [certain debt] obligations to promote the health, safety, and welfare of the residents of the Commonwealth."

48.     Section 201 of the Moratorium Act empowers the Governor of Puerto Rico "by executive order" to declare a moratorium with respect to "Covered Obligations" of certain Puerto Rico "Covered Entities" and banks. *Id*. at § 201(a). The period during which the Governor of Puerto Rico may declare such a moratorium (the "Covered Period") expires on January 31, 2017, unless "extended by executive order of the Governor for not more than two months." *Id*.

49.     A "Covered Obligation" is defined in the Moratorium Act to include "any interest obligation, principal obligation or enumerated obligation of a government entity that is due or becomes due during the emergency period in respect of such government entity", "any obligation

11

arising or resulting from […] the guarantee by such government entity of any obligation," and any "obligation to transfer funds" by such entity. Furthermore, an "Enumerated Obligation" is defined as "any obligation specifically listed or identified by category in an executive order, as may be amended from time to time, issued pursuant to Section 201(a) of this Act […]"

50.    PRHFA is explicitly defined as a "Government Entity" that may be subject to a moratorium under the Moratorium Act. *Id*. § 103(t)(i).

51.    Section 201 of the Moratorium Act further provides that once a state of emergency is declared for a government entity, "no act shall be done, and no action or proceeding, including issuance of process, shall be commenced or continued in any court in any jurisdiction, which could result in . . . the recovery from, or judgment or enforcement against such government entity related to any covered obligation, or any funds, property, receivables or revenues thereof." *Id*. at § 201(b)(i)(A). Any violation of this stay provision "shall be void and punishable by contempt of court." *Id.* at § 201(c).

52.    As of today, the PRHFA has not been declared by the Governor of Puerto Rico to be in a state of emergency. Accordingly, the PRHFA is not subject to any of the provisions of the Moratorium Act.

53.    Nonetheless, on April 8, 2016 and pursuant to the Moratorium Act, the Governor of Puerto Rico signed Executive Order 2016-10, which declared the GDB to be in a state of emergency. Accordingly, the Governor of Puerto Rico "instructed [the GDB] to honor withdrawal, payment, and transfer requests, including by check or other means, only if they are reasonable and necessary to fund the provision of essential services, relying on the certifications provided pursuant to Section 203(c)(ii) and (iii) of the Act and paragraphs Fourth and Sixth of this Executive Order."

54.     Although the PRHFA is a subsidiary of the GDB, the Moratorium Act treats the PRHFA independently from the GDB and, therefore, is not subject to the provisions of the Executive Order 2016-10.

55.     The "abandoned and unclaimed funds", to be deposited in the Special Account pursuant to Act 122-2010, do not constitute funds owned by the GDB or that the GDB or the Government of Puerto Rico could use for any other purpose other than those established in Act 122-2010.

**E. The Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA")**

56.     PROMESA, enacted by the United States' Congress on June 30, 2016, is intended to assist the Commonwealth of Puerto Rico and its territorial instrumentalities in achieving fiscal stability and responsibility. PROMESA establishes a Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") tasked with, among other things, the creation of a plan of adjustment to restructure and satisfy the debts of the Commonwealth of Puerto Rico and the instrumentalities designated by the Oversight Board as "covered" for purposes of the Act. *See* PROMESA §§ 101(b), 101(d), 104(j), 312.

57.     PROMESA prohibits the Commonwealth of Puerto Rico from taking certain actions after its enactment but before the Oversight Board is appointed and fully operational. During this period, the Commonwealth of Puerto Rico is barred from taking any action or enacting any law that would permit the transfer of funds or assets outside the normal course of business. *Id*. at § 204(c)(3)(B). Any action taken by the Governor or the Commonwealth's legislature authorizing the movement of assets during this interim period may be subject to review and reversal by the Oversight Board. *Id.* Since PROMESA's enactment, members of the Oversight Board have been appointed; however, the board is not yet fully operational.

13

58.     PROMESA contains several specific preemption provisions. Section 4 of PROMESA is a general supremacy provision, which states that "[t]he provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act." *Id.* at § 4. Section 303(1) further provides that the Commonwealth of Puerto Rico "may not prescribe a method of composition of indebtedness or a moratorium law without the consent of creditors." Section 303(3) expressly preempts "unlawful executive orders that alter, amend, or modify rights of holders of any debt of the territory or territorial instrumentality, or that divert funds from one territorial instrumentality to another or to the territory." *Id.* at §§ 303(1), (3).

59.     PROMESA imposes a stay on "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the Government of Puerto Rico that was or could have been commenced before the enactment of [PROMESA]," along with "any act to create, perfect, or enforce any lien against property of the Government of Puerto Rico." *Id.* at §§ 405(b)(1), (4). The United States District Court for the District of Puerto Rico is empowered to grant relief from the stay "for cause shown." *See id.* at § 405(e); *see also* § 405(g) (empowering the court to—with or without a hearing—lift the stay in order to prevent irreparable damage to the interest of an entity in property).

60.     PROMESA's litigation stay was not intended to impair claims against the Commonwealth of Puerto Rico, or impair any security interest or lien thereunder. Section 405(k) provides that the automatic stay "does not discharge an obligation of the Government of Puerto Rico or release, invalidate, or impair any security interest or lien securing such obligation." PROMESA further provides creditors with protection against transfers of property subject to a valid pledge by stating that any transferee shall be liable for the value of such property:

While an Oversight Board for Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property. *Id.* at § 407(a).

61.     Creditors are permitted to enforce their rights under § 407 by bringing an action in the U.S. District Court for the District of Puerto Rico after the stay imposed by § 405 has been lifted (or expired), as long as there is no stay in effect under a special reorganization proceeding pursuant to Title III of PROMESA. *See id.* at § 407(b).

**F.  Event of Default**

62.     Pursuant to the terms of the Participation Agreement entered into by Oriental Bank and the GDB, the GDB had the obligation to disburse to Oriental Bank the sum of $4,285,714.29, from the PRHFA funds deposited in the Special Account, for principal payment on September 30 of each year, beginning on the year 2014 through the year 2020.

63.     Oriental Bank has not received the principal payment in the amount of $4,285,714.29 that was due on September 30, 2016.

64.     According to Section 8 of the Participation Agreement, Oriental Bank was assigned "the rights of the Lender [the GDB] under or in connection with the Loan Agreement […]."

## COUNT I

### (Declaratory Judgment that the PROMESA Stay is not applicable)

65.     Plaintiff incorporates by reference Paragraphs 1 through 64 of the Complaint as if fully set forth herein.

66.     Section 405(b) of PROMESA provides that "the establishment of an Oversight Board for Puerto Rico (i.e., the enactment of this Act) in accordance with section 101 operates with respect to a Liability as a stay, applicable to all entities (as such term is defined in section 101 of title 11, United States Code), of […]."

67.     Regarding the term "Liability", as employed by PROMESA in the section cited above, Section 405(a)(1) of PROMESA defines it as follows:

> a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness for borrowed money, including rights, entitlements, or obligations whether such rights, entitlements, or obligations arise from contract, statute, or any other source of law related to such a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness in physical or dematerialized form, of which (A) the issuer, obligor, or guarantor is the Government of Puerto Rico; and (B) the date of issuance or incurrence precedes the date of enactment of this Act.

68.     The Treasury Department's obligations to transfer the Act 122-2010 "abandoned and unclaimed funds" into the Special Account and the GDB's obligation to distribute to Oriental Bank the annual payments due under the PRHFA Loan from the "abandoned or unclaimed funds" deposited in the Special Account do not constitute a "financial indebtedness" of any of those two entities with Oriental Bank and; therefore, do not constitute a "Liability" as defined in PROMESA. Accordingly, the claims presented in this Complaint are not subject to the stay imposed by Section 405 of PROMESA.

69.     To this effect, the Participation Agreement expressly states that "[n]o amount advanced by the Participant [Oriental Bank] to purchase any Participation in the obligation of PRHFA under the Loan Documents shall be considered a loan by Participant [Oriental Bank] to the Lender [the GDB]."

70.     Pursuant to 28 U.S.C. § 2201, Oriental Bank seeks a declaration from this Court that the PROMESA stay does not apply to this case.

## COUNT II

### (Relief from the PROMESA Stay)

71.     Plaintiff incorporates by reference Paragraphs 1 through 70 of the Complaint as if fully set forth herein.

72.     In the alternative that the Court determines that the PROMESA stay is applicable to Oriental Bank's claims, then Oriental Bank respectfully requests this Court to grant relief from the stay imposed by PROMESA pursuant to § 405(e) of PROMESA, which states that "[o]n motion of or action filed by a party in interest and after notice and a hearing, the United States District Court for the District of Puerto Rico, for cause shown, shall grant relief from the stay provided under subsection (b) of this section."

73.     Pursuant to Act 122-2010, the Credit Agreement and the Participation Agreement the "abandoned or unclaimed funds" deposited in the Special Account, as previously described, are the only source of repayment of the PRHFA Loan and, accordingly, of Oriental Bank's participation in the PRHFA Loan.

74.     The GDB failed to distribute to Oriental Bank the annual payment due under the Participation Agreement and that it agreed to hold in the Special Account, all of which causes an irreparable harm to Oriental Bank.

75.     Therefore, pursuant to Section 405(e) of PROMESA, Oriental Bank respectfully requests this Court to grant relief from the stay imposed by Section 405(b) of PROMESA.

## COUNT III

### (Declaratory Judgment that the Moratorium Act is not applicable in this case)

76.     Plaintiff incorporates by reference Paragraphs 1 through 75 of the Complaint as if fully set forth herein.

77.     Section 201(a) of the Moratorium Act empowers the Governor of Puerto Rico to order any government entity to cease payments of "covered obligations". Specifically, Section 201(a) provides that:

> Consistent with Section 108, the Legislature hereby directs the Governor to prioritize payment of essential services over covered obligations to promote the health, safety, and welfare of the residents of the Commonwealth during such covered period, as defined in this Act, and the Governor is hereby empowered, by executive order, to declare the Bank or any government entity to be in a state of emergency and identify in such order enumerated obligations of the Bank or any government entity, as applicable, and if the executive order so provides, no payment on a covered obligation of such Bank or government entity shall be made, other than as provided in sections 202 or 204 of this Act, during the emergency period for such Bank or government entity, as applicable. Any executive order issued under this subsection may be terminated or modified at any time by the Governor.

78.     Section 103(l) of the Moratorium Act defines a "covered obligation", as prescribed in Section 201(a), as:

> (1) any interest obligation, principal obligation or enumerated obligation of a government entity that is due or becomes due during the emergency period in respect of such government entity, (2) any obligation arising or resulting from, or related to, the guarantee by such government entity of any obligation of another entity that is due or becomes due during the emergency period, and (3) if provided for in an order issued pursuant under Section 201(c) of this Act, the transfer of, or obligation to transfer, funds required to be made in advance of, or on the due date of, any obligation identified in the preceding clauses (1) and (2), if, and in each case, such government entity, as applicable, is declared to be in a state of emergency by an executive order of the Governor as contemplated in Section 201(a) of this Act, as may be amended from time to time, but shall not include […].

79.     Lastly, Section 103(r) of the Moratorium Act defines an "enumerated obligations" as "any obligation specifically listed or identified by category in an executive order, as may be amended from time to time, issued pursuant to Section 201(a) of this Act […]."

80.     The Treasury Department's obligation to transfer the "abandoned or unclaimed funds" on or before January 1st of each year, as required by Act 122-2010, as amended, is not an

"interest obligation"[6] or a "principal obligation"[7] under the Moratorium Act. The GDB's duty to transfer these funds to Oriental Bank, as agreed in the Participation Agreement, is also not an "interest obligation" or a "principal obligation" of the GDB with Oriental Bank.

81.     Furthermore, the obligation of the Treasury Department to transfer the "abandoned or unclaimed funds" to the PRHFA's Special Account is not an "enumerated obligation" under the Moratorium Act nor any of the executive orders issued by the Governor of Puerto Rico.

82.     Also, the Governor of Puerto Rico has not issued any executive order declaring the PRHFA in a state of emergency. Accordingly, the PRHFA is not subject to any of the provisions of the Moratorium Act.

83.     Accordingly, neither the PRHFA's contractual obligations under the Credit Agreement, the Treasury Department's obligation to transfer the funds pursuant to Act 122-2010 nor the GDB obligation to distribute the corresponding annual payment to Oriental Bank under the Participation Agreement, are affected, in any way, by the provisions of the Moratorium Act or by any of the executive orders issued by the Governor of Puerto Rico.

84.     Pursuant to 28 U.S.C. § 2201, Oriental Bank seeks a declaration from this Court that the provisions of the Moratorium Act do not apply to this case.

85.     Moreover, given the undisputed fact that an "event of default" under the terms of the Participation Agreement has occurred, Oriental Bank respectfully requests this Court to order

---

[6] Defined by Section 201(x) of the Moratorium Act as "any obligation arising under or related to the payment of interest on any debt instrument but shall not include any interest obligation determined by the Governor, in his sole discretion, and identified in an executive order, as may be amended from time to time, issued pursuant to Section 201(a) of this Act, as not being an interest obligation for the purposes of this Act."

[7] Defined by Section 201(hh) of the Moratorium Act as "any obligation arising under or related to the payment of principal of any debt instrument but shall not include any principal obligation determined by the Governor, in his sole discretion, and identified in an executive order, as may be amended from time to time, issued pursuant to Section 201(a) of this Act, as not being a principal obligation for the purposes of this Act."

the GDB to repurchase Oriental Bank's participation in the Loan, as required by Section 26 of the Participation Agreement.

## COUNT IV

**(Declaratory Judgment that the Moratorium Act is unconstitutional and preempted by PROMESA)**

86.     Plaintiff incorporates by reference Paragraphs 1 through 85 of the Complaint as if fully set forth herein.

87.     Section 201 of the Moratorium Act and Executive Order 2016-10 effect a taking, without just compensation, of the property interest in the "abandoned or unclaimed funds" deposited in the GDB, as well as the contractual right to receive payment from those funds, granted to Oriental Bank pursuant to the Loan Agreement and Participation Agreement, in violation of the Takings Clause of the United States Constitution and of the Puerto Rico Constitution. As a result of the enactment of the Moratorium Act and Executive Order 2016-10, Oriental Bank is presently deprived of its property rights with respect to the funds designated for the repayment of PRHFA's loan under the Loan Agreement and the Participation Agreement.

88.     Similarly, the Moratorium Act and Executive Order 2016-10 also substantially impair the contractual obligations imposed by the Act 122-2010, the Loan Agreement, and the Participation Agreement in violation of the Contracts Clause of the United States Constitution and the Puerto Rico Constitution.

89.     The Moratorium Act and Executive Order 2016-10 have the effect of allowing the GDB to appropriate the funds "disbursed" by the PRHFA pursuant to the terms of the Loan Agreement, or by the Secretary of the Treasury on behalf of the PRHFA, in contravention with the GDB's contractual obligations under the Participation Agreement.

90.     Section 303(3) of PROMESA states that "unlawful executive orders that alter, amend, or modify rights of holders of any debt of the territory or territorial instrumentality … shall be preempted by this Act."

91.     Even though Oriental Bank is mainly a creditor of the PRHFA, the Executive Order 2016-10 directly affects Oriental Bank's contractual rights under the Participation Agreement, particularly Oriental Bank's right to be paid directly from the "abandoned or unclaimed funds" deposited in the Special Account, and impairs Oriental Bank's ability to collect the PRHFA debt.

92.     Pursuant to 28 U.S.C. § 2201, Oriental Bank seeks a declaration from this Court that the Moratorium Act is unconstitutional and preempted by PROMESA.

## COUNT V

### (Injunctive Relief)

93.     Plaintiff incorporates by reference Paragraphs 1 through 92 of the Complaint as if fully set forth herein.

94.     Oriental Bank seeks a preliminary injunction: (i) ordering the Governor of Puerto Rico, Hon. Alejandro García Padilla, in his official capacity, to ensure compliance by the Secretary of the Treasury with the obligations imposed by Act 122-2010; (ii) ordering the Secretary of the Treasury to deposit the "abandoned and unclaimed funds" in an account administered by the Court, given the extent of the conscious and voluntary disregard of the Defendants to their obligations under Act 122-2010 and the Participation Agreement and also their gross negligence as they have all acted in total disregard of their legal and contractual obligations; (iii) in the alternative, (a) ordering José A. Sierra Morales, in his official capacity as Executive Director of the PRHFA, to ensure compliance by the PRHFA with its obligations under Act 122-2010 , and open the Special Account and perform all necessary diligences to

ensure that the Act 122-2010 funds be deposited in the Special Account; (b) ordering Hon. Juan C. Zaragoza Gómez, in his official capacity as the Secretary of the Department of the Treasury of the Commonwealth of Puerto Rico, to comply with his ministerial and legal obligation to deposit the "abandoned or unclaimed funds", as defined in Act 122-2010, in the Special Account; (c) ordering Alberto Bacó Bagué, in his official capacity as President of the GDB, to comply with his obligations under the Participation Agreement; (iv) prohibiting Defendants from using these funds for purposes other than the repayment of the PRHFA Loan, and (v) ordering Mr. Bacó Bagué to ensure compliance by the GDB with its obligations under Section 26 of the Participation Agreement and repurchase Oriental Bank's participation in the PRHFA Loan.

95.     Oriental Bank further seeks a permanent injunction enjoining Defendants from implementing the Moratorium Act or enforcing Executive Order 2016-10 with respect to the PRHFA Loan and the Participation Agreement.

96.     In the absence of the relief herein requested, the funds designated for the repayment of the PRHFA Loan and deposited in the Special Account will be diverted for purposes other than repayment of Oriental Bank's participation in the PRHFA Loan, resulting in an irreparable harm to Oriental Bank. The injunctive relief requested by Oriental Bank is the only remedy available to prevent the unlawful disposition of the funds that belong to Oriental Bank pursuant to the law and the terms of the contracts.

**WHEREFORE**, Oriental Bank respectfully requests this Court enter a DECLARATORY JUDGMENT:

      a.   declaring that the stay imposed by PROMESA is not applicable to the claims made by Oriental Bank in this case;

      b.   in the alternative, granting relief from the automatic stay imposed by PROMESA;

    c.  declaring that the provisions of the Moratorium Act do not apply to this case; and

    d.  in the alternative, declaring that the Moratorium Act is unconstitutional and preempted by federal law.

And, also, issue a PRELIMINARY INJUNCTION:

    a.  ordering the Governor of Puerto Rico, Hon. Alejandro García Padilla, in his official capacity, to ensure compliance by the Secretary of the Treasury with the obligations imposed by Act 122-2010;

    b.  ordering the Secretary of the Treasury to deposit the "abandoned and unclaimed funds" in an account administered by the Court, given the extent of the conscious and voluntary disregard of the Defendants to their obligations under Act 122-2010 and the Participation Agreement and also their gross negligence as they have all acted in total disregard of their legal and contractual obligations;

    c.  in the alternative, (i) ordering José A. Sierra Morales, in his official capacity as Executive Director of the PRHFA, to ensure compliance by the PRHFA with its obligations under Act 122-2010 , and open the Special Account and perform all necessary diligences to ensure that the Act 122-2010 funds be deposited in the Special Account; (ii) ordering Hon. Juan C. Zaragoza Gómez, in his official capacity as the Secretary of the Department of the Treasury of the Commonwealth of Puerto Rico, to comply with his ministerial and legal obligation to deposit the "abandoned or unclaimed funds", as defined in Act 122-2010, in the Special Account; (iii) ordering Alberto Bacó Bagué, in his official capacity as President of the GDB, to comply with his obligations under the Participation Agreement;

d.  prohibiting Defendants from using these funds for purposes other than the repayment of the PRHFA Loan;

e.  ordering Mr. Bacó Bagué to ensure compliance by the GDB with its obligations under Section 26 of the Participation Agreement and repurchase Oriental Bank's participation in the PRHFA Loan;

f.  ordering Mr. Bacó Bagué to distribute the payment received from the PRHFA in the first quarter of 2016 and apply such payment pro-rata to the corresponding undivided interests of GDB and Oriental Bank in the PRHFA Loan;

g.  permanently enjoining all Defendants from implementing the Moratorium Act and Executive Order 2016-10 with respect to the Department of Treasury's obligation under Act 122-2010 to transfer the "abandoned and unclaimed funds" in the Special Account and the GDB's obligation to distribute to Oriental Bank the annual payments under the Participation Agreement using the PRHFA funds deposited in the Special Account; and

h.  granting such other relief as this Court may deem just and proper.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 26th of October 2016.

**DELGADO & FERNÁNDEZ, LLC**
PO Box 11750
Fernández Juncos Station
San Juan, PR 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241

s/Alfredo Fernández Martínez
**ALFREDO FERNÁNDEZ MARTÍNEZ**
USDC-PR #210511
afernandez@delgadofernandez.com

s/Pedro Hernández Freire
**PEDRO HERNÁNDEZ FREIRE**
USDC-PR #231702
phernandez@delgadofernandez.com